(125 App. Div. 622.)

### LANIGAN v. BROOKLYN HEIGHTS R. CO.

(Supreme Court, Appellate Division, Second Department. April 24, 1908.)

STREET RAILROADS—MAINTENANCE OF TROLLEY POLES—LIBILITY FOR INJURIES.

A driver of a truck was injured by a wheel being caught by a trolley pole of a street railroad company on property owned by a ferry company for its business. The pole was about six inches outside of the curb. It was necessary to maintain a pole near where it was. Permission from the ferry company to move the pole behind the curb had been denied. The ferry company had denied the railroad company the right to make any physical change of the surface of the ground where the pole was located. Held, that the company was not liable, either on the ground that it negligently maintained the pole, or on the ground that it failed to place a hub stone at the base of the pole, since it was only required to exercise reasonable care, which did not require of it any attempt to proceed to condemn the right to maintain the pole back of the curb.

Rich, J., dissenting.

Appeal from Trial Term, Kings County.

Action by Elizabeth M. Lanigan, administratrix of Patrick Lanigan, deceased, against the Brooklyn Heights Railroad Company. From a judgment for plaintiff, defendant appeals. Reversed, and new trial granted.

Argued before WOODWARD, JENKS, HOOKER, GAYNOR, and RICH, JJ.

D. A. Marsh, for appellant.

J. Arthur Hilton, for respondent.

HOOKER, J. The plaintiff's intestate, driving a truck heavily laden, received injuries from which he died. The hub of a rear wheel of the truck caught against a trolley pole used to support the trolley wires of the defendant, and the driver was thrown violently down. The pole was situated about 6 inches outside of the curb bounding the sidewalk east of the ferry house, in the borough of Brooklyn, owned by the Brooklyn Ferry Company. Egress from the ferryboats of this company was had through a plaza about 75 feet wide and 75 feet long, up a grade of nearly 10 per cent., to Kent avenue. The plaintiff's intestate was driving his team attached to this truck easterly up this grade. The plaza was bounded on the north by the curb inclosing the sidewalk which surrounded the ferry house, and this curb extended easterly to within about 8 feet of the line of Kent avenue, a public thoroughfare. At that point the curb turned northward, and at the turn, and a little to the north of its south side, and 6 inches east of its new direction, the trolley pole was situated. Opposite the east

end of the ferry house the defendant maintained three tracks on Kent avenue, one north-bound, one south-bound, and one siding or switch. Between the switch, which was the most westerly of these three tracks, and the sidewalk in front of the ferry house, there was no sidewalk especially constructed for pedestrians, so that to a casual observer it was apparently all highway between the sidewalk on the east side of Kent avenue and the sidewalk in front of the ferry house. The trolley pole had been in that place for many years and it is entirely clear from the evidence that a pole at that place or near it was necessary for the proper maintenance of the trolley wires of the defendant's road in Kent avenue. The pole was erected by the predecessor of the defendant, all of the locus from the river to the west line of Kent avenue was the property of the ferry company, and the defendant was on the property with its pole by the permission of that company. It must also be taken as a fact from the evidence that the defendant had been refused permission by the ferry company to move the pole inside the curb, and permission had also been denied the defendant to make any change whatever in the physical situation at that spot. In his submission of his case to the jury the learned trial court permitted them to predicate negligence on the part of the defendant because of the place where the trolley pole was allowed to stand, and also on the omission of the defendant to provide the foot or base of the pole with a so-called hub stone. The plaintiff claimed that the purpose of a hub stone was to strike the circumference of the wheels of vehicles and shunt them away from the pole, so that there might be no catching of the vehicle by the the pole. A hub stone is circular, made of some appropriate material, and larger in diameter than the pole itself.

In view of the necessity of the pole at or near the place where it stood, in view of the fact that the defendant had prior to the time of the accident endeavored to obtain permission from the owner of the land to move the pole behind the curb, and in view of the fact that, if the pole had been taken out and moved into the highway, where doubtless the defendant had a right to place it, there must have been even a greater obstruction to traffic, the defendant was not liable by reason of the location of the pole. The right of the defendant to condemn, in order that it might place the pole back of the curb, is at best doubtful, inasmuch as the owner of the property, which it would have been necessary to condemn, was itself a quasi public corporation, using the property for the purpose of carrying on its business of a common carrier. The measure of the defendant's duty was to exercise merely reasonable care. It was not required to exercise the highest degree of diligence to place the pole or replace it in a position of absolute safety. Permission to move it having been denied by the owner of the land, ordinary care did not require the defendant to attempt condemnation, especially in view of the doubt which exists in respect to whether such proceedings would be successful against a quasi public corporation. It would seem that the plaintiff is pursuing the wrong party. The ferry company allowed the pole to remain where it was on its own property and prevented its change into a safer place.

What has been said in relation to the location to the pole applies to

the absence of a hub stone. To place such an instrument at the base of the trolley pole would doubtless have required a physical change of the surface of the ground there. The ferry company denied to the defendant the privilege of moving even a cobblestone, and the defendant was doubtless without power to enter upon the ferry company's property and make changes or improvements there without the consent of the latter.

The judgment must be reversed, and a new trial granted; costs to abide the event. All concur, except RICH, J., who dissents.